cluding from them that the mining lease was enforceable.

 In so holding, we treat conclusion of law number 2 as a factual determination. That the district court denoted such a finding as a conclusion of law is not reversible error. The labels of fact and law assigned by the trial court are not controlling. Furthermore, findings on every issue presented in a case are unnecessary if the trial court has found such essential facts as lay a basis for the decision. The district court's failure to make explicit findings in regard to the alleged breaches of the lease does not itself require either reversal or remand. We believe that in this case a complete understanding of the issues is afforded by the record and by the district court's other findings. Rule 52(a) requires that the findings of the lower court be sufficient to indicate the factual basis for the ultimate conclusion. That standard has been met here.

### IV.

For the reasons expressed above, the judgment of the district court is affirmed.

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Earl CURTIS,**
**Defendant-Appellant.**

No. 83–2351.

United States Court of Appeals,
Seventh Circuit.

Submitted June 7, 1984.*

Decided Aug. 28, 1984.

As Amended Sept. 18, 1984.

Rehearing and Rehearing En Banc
Denied Oct. 24, 1984.

---

* After preliminary examination of the briefs, the     court notified the parties that it had tentatively

concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Robert C. Babione, Babione, Edwards & Putzel, St. Louis, Mo., for defendant-appellant.

David E. Risley, Asst. U.S. Atty., Danville, Ill., for plaintiff-appellee.

Before WOOD, CUDAHY and COFFEY, Circuit Judges.

PER CURIAM.

Defendant-appellant Curtis appeals from a final judgment of the district court denying his motion to vacate his conviction of bank robbery. 28 U.S.C. § 2255. The motion, filed on March 4, 1980, originally was summarily dismissed. Curtis appealed. This court, in an unpublished order dated March 1, 1982, reversed and remanded the case for an evidentiary hearing on Curtis ineffective assistance of counsel claim. On the basis of the evidence adduced at that hearing, the district court concluded that trial counsel's representation was competent and effective.

I

Curtis was convicted of bank robbery largely on the testimony of Harris, co-defendant turned government star witness. Harris placed both Curtis and his car at the "switch site," where an exchange of cars was to take place following the robbery.

In his section 2255 motion, Curtis alleged that the following acts and omissions by counsel constituted ineffective assistance: (1) counsel failed to investigate Curtis' alibi defense; (2) counsel failed to present witnesses or evidence at trial to impeach Harris' testimony; and (3) counsel refused to permit Curtis to testify despite Curtis' clearly expressed desire to do so.

Both Curtis and his trial counsel, Isaiah Gant, testified at the evidentiary hearing. Gant's testimony may be summarized as follows. In initial interviews with Curtis at the jail, Curtis had denied involvement in the bank robbery, had provided Gant with a list of alibi witnesses, and had informed Gant of a repair receipt which would establish that his car was in a repair shop in Chicago at the time of the robbery in St. Anne. Subsequently, Curtis' two other co-defendants, who were released on bond, sought out Gant and informed him that Curtis and his car were involved in the robbery. When Gant confronted Curtis with this information, Curtis admitted to Gant that he had participated in the robbery. Despite that admission, Curtis insisted that Gant should seek to introduce the repair receipt into evidence at trial, stating that the shop mechanic would testify on his behalf. Gant's determination not to attempt to introduce the repair receipt, which he believed to be bogus based on his conversations with Curtis' co-defendants, was strengthened when he saw the mechanic at the courthouse prior to trial, and learned that he had been speaking with the prosecutor and had been subpoenaed by the government as a witness. When Gant asked the mechanic whether he would testify on behalf of Curtis, the mechanic responded that he did not want to get involved. Gant then informed Curtis that any attempt to introduce the repair receipt would be a crucial mistake.

Gant stated that the alibi witnesses suggested by Curtis were not called because Gant knew their testimony would be false.[1] Gant further testified that he determined not to call certain witnesses who were prepared to testify that Curtis and Harris had had a falling out because their lack of credibility outweighed any impeachment value their testimony might have.

Finally, Gant testified that his decision not to call Curtis as a witness was based upon his assessment that the best way to defend Curtis was to challenge the credibility of the government's witnesses and point out inconsistencies in the government's case; his belief that Curtis would perjure himself; and his determination that Curtis' two prior convictions of armed robbery, which would have been revealed to the jury on cross-examination, would have irreparably damaged the defense.

The most relevant portion of Curtis' testimony at the hearing was his assertion that he had not admitted his participation in the robbery to Gant. The district judge specifically stated that he believed Gant, not Curtis, on this point.

On the basis of the testimony, the district court concluded that Curtis had informed Gant of the witnesses who, and evidence which, allegedly would establish Curtis' alibi; that Gant investigated the asserted defense; and that Gant properly determined not to present the testimony of the witnesses or the documentary evidence because he believed the former would be perjured and the latter to be fabricated. The court further concluded that Gant's refusal to permit Curtis to testify was justified under the circumstances.

## II

The Supreme Court recently held that the proper standard for judging an attorney's performance under the sixth amendment is that of "reasonably effective assistance." *Strickland v. Washington,* — U.S. ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A convicted defendant must show that counsel's performance fell below an "objective standard of reasonableness." *Id.,* 104 S.Ct. at 2065. Specifically, the defendant must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.,* 104 S.Ct. at 2066. The reviewing court then must assess whether, in light of all circumstances, these acts or omissions fell outside the wide range of professionally competent assistance. The second prong of an ineffective assistance of counsel analysis requires an assessment of prejudice resulting from the specified deficiencies in counsel's performance.

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.,* 104 S.Ct. at 2068. In other words, "the question is whether there is a reasonable probability that, absent the errors, the fact-

---

1. The affidavits attached to Curtis' section 2255 motion suggest that the following alibi witnesses would have testified that Curtis could not possibly have participated in the 2:00 p.m. bank robbery in St. Anne, approximately 80 miles from Chicago. Gloria Kirkpatrick, who lived with Curtis, was prepared to testify that he awoke at 12:30 p.m. and then shaved and showered. Yvonne Riley, a friend of Curtis' sister, was prepared to testify that she visited Curtis from before noon until 12:45 p.m. at his home on the west side of Chicago. Ezell Jenkins, Curtis' friend and an ex-convict, would have testified that at Curtis' request, he took Curtis' car, which was in perfect condition, to the re-

pair shop on November 18, 1976, and retrieved it on November 20, 1976. He further would have testified that on the day of the robbery, he was with Curtis at Curtis' home until "well after" 1:00 p.m. Minnie Taylor, Curtis' hair stylist, was prepared to testify that Curtis had a 2:00 p.m. appointment at her salon on the west side of Chicago, and that he arrived at the salon at 2:30 p.m. to cancel the appointment. Finally, Frank Jurado, the mechanic, would have testified that Curtis' car was in his shop for repairs from November 18 to November 20. He also stated in his affidavit that he never received a call from Gant, although he had informed Curtis' sister that he would testify on Curtis' behalf.

finder would have had a reasonable doubt respecting guilt." *Id.,* 104 S.Ct. at 2069.

### III

Curtis' claim that counsel's decision not to pursue an alibi defense is evidence of ineffective assistance has been abandoned on appeal, assertedly because Curtis now recognizes the decision as a virtually unassailable strategic choice based upon counsel's assessments that the alibi witnesses lacked credibility and that the best defense was to attack Harris' credibility. In evaluating his ineffective assistance of counsel claim, Curtis would have this court focus solely upon counsel's failure to attempt to impeach Harris with the repair receipt and testimony that Curtis and Harris had had a falling out, and counsel's refusal to permit him to testify.

We note parenthetically that Curtis mischaracterizes counsel's decision not to pursue an alibi defense as a strategic choice. It was not. The district court found that the decision was based upon counsel's conclusion that the witnesses would offer perjured testimony. The court noted that counsel arrived at this conclusion after Curtis' co-defendants informed him that Curtis and his car were at the "switch site," and after Curtis admitted his participation in the bank robbery. The district court made a factual finding, based upon a credibility determination, that Curtis had admitted his involvement to Gant, and concluded that in accordance with his ethical obligation to refrain from knowingly using perjured testimony or false evidence, counsel refused to present the alibi witnesses or the repair receipt.

Curtis argues that Gant's conclusion that he, Curtis, was guilty led him to abdicate his duty to investigate the case and vigorously advocate his cause; although Gant determined that the only way to defend Curtis was to attack Harris' credibility, he failed to present evidence or the testimony of witnesses that might have cast doubt on the truth of Harris' testimony.

Curtis focuses first upon the repair receipt, which he argues could have been used to impeach Harris without confronting the perjury issue. He contends that Gant overlooked the distinction between the presence of Curtis at the "switch site" and the presence of his car there. Although Curtis had admitted his participation in the robbery, he had not admitted that his car was used. Because Harris had placed both Curtis and his car at the site, his testimony could have been partially impeached by introducing evidence that Curtis' car was in the repair shop.

We would remind Curtis that a tactical decision not to call a particular witness or seek to introduce a particular piece of evidence, if made after adequate investigation and based upon counsel's reasonable determination that damage to his client's case can thereby be avoided, cannot form the basis for a finding of ineffective assistance of counsel. When Gant, who already believed the repair receipt was fabricated, learned that the government had subpoenaed the mechanic who allegedly would testify to the authenticity of the receipt, he reasonably surmised that if he attempted to introduce the receipt, the prosecution would reveal its falsity through the mechanic's testimony. Curtis simply has not "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington,* 104 S.Ct. at 2066 (quoting *Michel v. New York,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

Curtis also focuses upon Gant's failure to call witnesses who would have testified to the stormy relationship between Harris and Curtis. Curtis' daughter, Consuella, was prepared to testify that Harris and Gwendolyn Owens, Harris' common-law wife, lived with Curtis; that Curtis also had a relationship with Owens, which created bad feelings between Curtis and Harris; that Harris had made advances at her, Consuella; and that as a result, Curtis had demanded that Harris move out of the house. Consuella's testimony allegedly would have established that Harris' motivation in naming Curtis as a participant was

jealousy. In addition, Curtis' mother would have testified that contrary to Harris' testimony, Curtis, Harris, and several other men did not meet at her house to discuss plans for the robbery. Finally, Johnnie Mae McDonald, Curtis' sister, who apparently was implicated in the robbery by Harris but never indicted, desired to testify that contrary to Harris' testimony, Harris never came to her home to pick up "drawings or maps of the bank," and that because Harris lied about her involvement in the robbery, he also must have lied about Curtis' involvement.

The affidavits of McDonald and Consuella Curtis establish that Gant spoke personally with each about the circumstances to which they desired to testify. Although it appears that Gant did not interview Curtis' mother, the substance of her proffered testimony was made known to him by Curtis' sister. We cannot say as a matter of law that Gant's failure to call these witnesses showed incompetence. The interests and biases of all three are readily apparent; Gant's determination that their close relationships with Curtis and, in the case of McDonald, the fact that Harris had implicated her in the robbery, outweighed any impeachment value their testimony might have was a "reasonable professional judgment." *Strickland v. Washington*, 104 S.Ct. at 2066.

■ Lastly, Curtis challenges counsel's refusal to permit him to testify in his own behalf. The district court found as a matter of fact that Curtis wanted to testify and that Gant refused to put him on the stand. The district court concluded as a matter of law that Gant's refusal was justified by ethical considerations and trial strategy. Specifically, Gant, whose usual practice was not to put the defendant on the stand, believed that the defense would be harmed when Curtis' prior convictions were re-

vealed on cross-examination. And, Gant believed Curtis would perjure himself; therefore, in accordance with Disciplinary Rule 7–102(a)(4) of the Code of Professional Responsibility, Ill.Rev.Stat. ch. 110A, Canon 7 (1980), which prohibits a lawyer from knowingly using perjured testimony, Gant refused to allow Curtis to testify.

Of key importance to the disposition of this claim is this circuit's decision in *Alicea v. Gagnon*, 675 F.2d 913, 923 (7th Cir.1982), in which it was held that a criminal defendant has a constitutional right, rooted in the fifth, sixth, and fourteenth amendments, to testify in his own behalf. In so holding, we overruled in part, *Sims v. Lane*, 411 F.2d 661 (7th Cir.1969). In *Sims*, the petitioner claimed that counsel denied him his right to testify at trial;[2] counsel did so because they "did not believe that the matters the defendant asserted he would testify to were true." *Id.* at 662.[3] The *Sims* court held that a defendant has no federal constitutional right to testify in his own behalf:

> To the contrary, the federal rule seems to be that the exercise of this right is subject to the determination of competent trial counsel and varies with the facts of each case.

*Id.* at 664. The decision whether to have the defendant testify was treated as a matter of trial strategy, an inappropriate basis for a constitutional ineffective assistance of counsel claim. This court stated in *Alicea* that *Sims* was overruled "to the extent that it failed to acknowledge a federal constitutional basis for a defendant's right to testify in his own behalf." *Alicea v. Gagnon*, 675 F.2d at 922. One issue presented here is whether recognition of the constitutional dimensions of a defendant's right to testify mandates the conclusion that the right may not be waived by counsel as a matter of trial strategy.

---

**2.** The *Sims* court noted that because petitioner had not advised the trial court that he wished to testify in his own behalf, thereby permitting the court to rule on the asserted right to testify, petitioner's quarrel was with trial counsel. The claim was treated as one of ineffective assistance of counsel. *Sims v. Lane*, 411 F.2d at 665.

**3.** At an evidentiary hearing on Sims' petition for a writ of habeas corpus, counsel testified that Sims' testimony "would have contradicted the testimony of every State witness and would have been inconsistent with the theory of the defense." *Sims v. Lane*, 411 F.2d at 663.

■ Certain constitutional rights are so fundamental that they are deemed personal to a defendant, and he alone may decide whether these rights will be exercised or waived. Included are: the decision whether to plead guilty or proceed to trial, *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); the decision whether to be tried by judge or jury, *Adams v. United States ex rel. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed.2d 268 (1942); the decision whether to appeal, *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); and the decision whether to forego the assistance of counsel, *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In *Wright v. Estelle,* 572 F.2d 1071, 1077–80 (5th Cir. 1977) (*en banc*), Judge Godbold, dissenting from the majority decision, which assumed the existence of a personal constitutional right to testify for the purpose of applying a harmless error analysis to the denial of that right, concluded that the right to testify in one's own behalf also is of constitutional dimension, is personal to the defendant, and may not be waived by counsel under the rubric of trial strategy. Like Judge Bauer, who in overruling *Sims* in *Alicea* found Judge Godbold's dissent in *Wright* "particularly persuasive authority that *Sims* is obsolete," we find that same dissent persuasive on the issue whether the right to testify in one's own behalf is a personal one which may not be waived by counsel.

We recognize that the exercise of certain constitutional rights, such as a defendant's sixth amendment right to present evidence and witnesses on his behalf, are subject to control and direction by defense counsel; however, we do not believe the decision whether the defendant will testify falls within this category. *See Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594 (1977) (Burger, J., concurring) ("Only such basic decisions as whether to plead guilty, waive a jury, or

testify in one's own behalf are ultimately for the accused to make."). *See also* ABA Standards for Criminal Justice, The Defense Function § 4–5.2 (1980). We believe that a defendant's personal right to forego the assistance of counsel and conduct his own defense, recognized in *Faretta,* also encompasses his personal right to testify in his own behalf as a part of that defense. That a defendant's decision to do so may be unwise from a tactical standpoint also may be said of a defendant's personal decision to proceed to trial or to invoke his right to a trial by jury. But, as Judge Godbold put it, "[t]he wisdom or unwisdom of the defendant's choice does not diminish his right to make it." *Wright v. Estelle,* 572 F.2d at 1079.

■ When a defendant asserts that he desires to exercise his constitutional right to testify truthfully, counsel's duty is to inform the defendant why he believes this course will be unwise or dangerous. If a defendant insists on testifying, however irrational that insistence might be from a tactical viewpoint, counsel must accede. We hold that a defendant's personal constitutional right to testify truthfully in his own behalf may not be waived by counsel as a matter of trial strategy. Any remnant of the *Sims* decision that suggests otherwise is no longer viable.

■ It is equally clear, however, that a defendant has no constitutional right to testify perjuriously in his own behalf. The specifics of what Curtis wanted to testify to were revealed by him at the evidentiary hearing: "I would have stated that I was in Chicago all day on the 19th of November." The district court made a factual finding, to which we previously referred, that Curtis had admitted his participation in the robbery to Gant. Because it seems apparent that Curtis would have testified perjuriously, counsel's refusal to put him on the witness stand cannot be said to have violated Curtis' constitutional rights.[4]

**4.** We emphasize that we address only the issue whether counsel's actions infringed upon Curtis' constitutional right to testify truthfully in his

own behalf. Whether counsel's response to the situation conformed to professional standards is not an issue before us. We note, however, the

The district court's judgment denying Curtis' motion to vacate his conviction is AFFIRMED.

approach suggested by the ABA Standards for Criminal Justice, The Defense Function § 4–7.7 (1980) (proposed standard):

[ (a) If the defendant has admitted to defense counsel facts which establish guilt and counsel's independent investigation established that the admissions are true but the defendant insists on the right to trial, counsel must strongly discourage the defendant against taking the witness stand to testify perjuriously.

[ (b) If, in advance of trial, the defendant insists that he or she will take the stand to testify perjuriously, the lawyer may withdraw from the case, if that is feasible, seeking leave of the court if necessary, but the court should not be advised of the lawyer's reason for seeking to do so.

[ (c) If withdrawal from the case is not feasible or is not permitted by the court, or if the situation arises immediately preceding trial or during the trial and the defendant insists upon testifying perjuriously in his or her own behalf, it is unprofessional conduct for the lawyer to lend aid to the perjury or use the perjured testimony. Before the defendant takes the stand in these circumstances, the lawyer should make a record of the fact that the defendant is taking the stand against the advice of counsel in some appropriate manner without revealing the fact to the court. The lawyer may identify the witness as the defendant and may ask appropriate questions of the defendant when it is believed that the defendant's answers will not be perjurious. As to matters for which it is believed the defendant will offer perjurious testimony, the lawyer should seek to avoid direct examination of the defendant in the conventional manner; instead, the lawyer should ask the defendant if he or she wishes to make any additional statement concerning the case to the trier or triers of the facts. A lawyer may not later argue the defendant's known false version of facts to the jury as worthy of belief, and may not recite or rely upon the false testimony in his or her closing argument.]