GROSS, C.J.
 

 This ease concerns a defendant’s desire to testify in greater detail about the incidents giving rise to the criminal charges, confronted by his attorney’s belief that more testimony was not a good idea. The judge offered the defendant the choice of testifying further by giving up his attorney, and representing himself. The defendant chose not to testify. We hold that the trial court improperly forced a choice between two constitutional rights, and reverse.
 

 Appellant Willie Wilson was charged with two counts of lewd or lascivious exhibition in violation of section 800.04, Florida Statutes (2006). Count I alleged that Wilson exposed his genitals on July 18, 2006; count II alleged that he masturbated in the presence of a victim under 16 at some time between June 30, 2006 and July 25, 2006.
 

 Prior to trial, Wilson did not have a smooth relationship with his lawyer, an assistant public defender. Three times, he moved to discharge her and have new counsel appointed, complaining of her preparation of the case, but the trial judge denied all motions and Wilson chose to keep the lawyer as his trial counsel. Throughout the trial, the circuit judge demonstrated great patience in handling Wilson’s ambivalence about the representation of his lawyer.
 

 The state’s case at trial was based primarily
 
 [1]
 
 on the eyewitness testimony of two witnesses — fifteen year old S.M. and Camille Hall.
 

 S.M. worked 30 hours a week in the Lauderhill library as part of a summer youth program. She frequently saw Wilson in the library. On July 25, 2006, she
 
 *294
 
 observed Wilson in the non-fiction section, sitting against a wall reading a book. Wilson was wearing loose fitting gym shorts. As S.M. went from aisle to aisle reshelving books, Wilson moved his seat so he could continue to watch her. S.M. saw Wilson at the end of an aisle playing with himself; she described Wilson’s actions as “jacking,” or moving his hand on his fully clothed penis. S.M. made eye contact with Wilson, but he said nothing to her. S.M. had seen Wilson behave in a similar fashion on other days that she worked in the library.
 

 About a week before the July 25 incident, S.M. and Hall were working together in the library stacking tapes and reshelv-ing books. They saw Wilson seated on the floor in the next aisle. Both girls were within his range of vision. Wilson was wearing loose fitting basketball shorts, reading a book. Both girls noticed Wilson’s bare, flaccid penis poking out of the leg opening of his shorts, which appeared to be “scrunched up,” in a way that maximized the exposure. Wilson did not look at or speak to either of the girls during this encounter.
 

 After his arrest at the library on July 25, Wilson told a detective that he had often chatted with a short, skinny teenage girl who worked in the library and had once purchased her Chinese food. He explained that he had just gotten over a case of the crabs, which might explain why he had been compulsively scratching himself earlier. Wilson also denied exposing himself in the library the week before.
 

 During the state’s case, Wilson moved the trial court for permission to represent himself. The trial judge conducted a hearing consistent with
 
 Faretta v. California,
 
 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), which concluded with Wilson’s withdrawal of his motion.
 

 After the state rested its case, the trial judge asked if Wilson was going to testify. Defense counsel told the court that she had discouraged Wilson from testifying, having specified her concerns in a letter to the client. Wilson consulted with his attorney in the courtroom and informed the judge that he had decided not to testify. The court then conducted a detailed colloquy on whether Wilson’s decision not to testify was knowing and voluntary. As part of the colloquy, the court told Wilson that the decision to testify was his alone, not trial counsel’s, that counsel’s advice was based on her professional judgment, but Wilson was free to disregard the advice, and that Wilson’s decision to testify took precedence over his lawyer’s advice.
 

 Once the court found that Wilson had freely and voluntarily decided not to be a witness, Wilson asked for more time to consult with his lawyer about his decision on testifying. After he had spoken with his attorney, Wilson told the court that he wanted to take the witness stand and have her ask him certain questions. First, Wilson focused on the date July 18, 2006, and said he would like to introduce records that showed he was at a chiropractic appointment on that date. Defense counsel thought the records were inadmissible as hearsay and not helpful to the defense, since Wilson was not at the chiropractor’s the entire day and the information did not pinpoint the day of the offense as July 18. Wilson’s attorney refused to offer this evidence and suggested that Wilson could “represent himself on this, or whatever he needs to do.”
 

 The judge then asked Wilson if he wanted to represent himself. Wilson responded that the assistant public defender was his lawyer and that he “never fired her,” but merely “asked her the situation.” The court explained that trial counsel had made a tactical decision not to ask about
 
 *295
 
 the chiropractor. The judge indicated that Wilson could testify as to his whereabouts without admission of the documents into evidence; the court gave a preliminary ruling that the records Wilson sought to introduce would be inadmissible as hearsay.
 

 The judge asked Wilson if he wanted to represent himself. Wilson replied, “No, sir.” He stated that he had changed his mind, and now wanted to testify. Wilson took the witness stand, and defense counsel questioned him as follows:
 

 Q. Sir, have you ever had a felony conviction?
 

 A. Yes.
 

 Q. How many?
 

 A. Two.
 

 Q. You know we are talking about an alleged incident in the Lauderhill library, correct?
 

 A. Yes.
 

 Q. Back in 2006, do you know how often you visited the library?
 

 A. I went there two or three times a week.
 

 Q. Why did you go there?
 

 A. My friend taught me how to use the computer. I make gospel CDs and other CDs to sell them.
 

 Q. Have you ever masturbated in the library?
 

 A. No.
 

 Q. Did you ever scratch yourself in the library?
 

 A. Yes.
 

 Q. Why were you doing that?
 

 A. At that time, about two or three weeks ago, I got over crabs. I used stuff to put on it.
 

 Q. You were scratching because you were itching?
 

 A. Yes.
 

 Q. Did you go to the library on July 16th?
 

 A. Yes.
 

 THE COURT: [Defense counsel], anything else?
 

 DEFENSE COUNSEL: The defense rests.
 

 The jury was excused. The judge asked Wilson if there was anything not asked by trial counsel about which he wanted to testify. Wilson replied, “Yes,” and complained that his lawyer had cut him off. He specified that he wanted to testify about:
 

 1. The physical layout of the library illustrated by photographs;
 

 2. Whether his two accusers were in a position to see him and whether he was able to see them from where he was sitting;
 

 3. How long he was in the library on July 25; whether he used the library computer; when he got off the computer; whether he saw either girl when he got a newspaper; whether he spoke to the girls; whether either girl had ever asked him to get them food or asked him for money; whether he had ever seen Hall outside of the library; if the girls knew that he worked at Publix.
 

 4. Whether he saw a police officer walking past him when he exited the library; whether he looked to see if his fiancé was waiting outside; whether he went back inside the library; that he did not run away when he first saw the police officer.
 

 5. What he did on July 18 and whether he had gone to the chiropractor that day.
 

 Defense counsel told the court that she did not want to ask Wilson any of these questions. She thought the questions were contrary to the defense that the accusers were mistaken. She was concerned
 
 *296
 
 that there would be a “real danger” in having Wilson testify further, due to his difficulty with staying on topic. She explained to the judge:
 

 I’m trying to be as careful as I can be. I don’t want to get to the point ... that I have to let him testify in the narrative because I have no other ethical choice. We got him what he wanted. Now, he brought up these other things. I don’t know what the Court wants to do. We rest our case.
 

 The judge then addressed Wilson, telling him that his lawyer believed it was not in his best interest to ask him any more questions. The court asked:
 

 Do you wish to represent yourself? If you represent yourself you can tell the jury all that you want. You would be subjecting yourself to cross examination by [the assistant state attorney] ... If you want to represent yourself, after a
 
 Faretta
 
 hearing, I would allow you to reopen your case and testify, if you wish ... Do you wish to do that?
 

 WILSON: I will keep my counsel.
 

 Defense counsel told the judge that there were no further matters to be addressed and the court ruled that the evidence was closed, without the jury hearing additional testimony from Wilson.
 

 In making Wilson choose between testifying further and giving up his attorney, the trial court erred by forcing him to choose between two constitutionally protected rights, the right to testify and the right to counsel.
 

 A defendant’s right to testify on his own behalf “is now a recognized fundamental right.”
 
 United States v. Scott,
 
 909 F.2d 488, 490 (11th Cir.1990) (quoting
 
 Ortega v. O’Leary,
 
 843 F.2d 258, 261 (7th Cir.1988));
 
 see United States v. Bifield,
 
 702 F.2d 342, 347 (2d Cir.1982);
 
 United States v. Bernloehr,
 
 833 F.2d 749, 751 (8th Cir.1987);
 
 State v. Staley,
 
 91 Hawai’i 275, 982 P.2d 904, 916 (1999). In
 
 Taylor v. Illinois,
 
 484 U.S. 400, 408-09, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), the Supreme Court held that an accused’s “right to offer testimony is ... grounded in the Sixth Amendment even though it is not expressly described in so many words.” In so holding, the Court relied on
 
 Washington v. Texas,
 
 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), for the proposition that the right of a criminal defendant “to present his own witnesses to establish a defense ... is a fundamental element of due process of law.”
 
 Taylor
 
 is consistent with
 
 Rock v. Arkansas,
 
 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), where the Court wrote:
 

 Even more fundamental to a personal defense than the right of self-representation ... is an accused’s right to present his own version of events in his own words.
 

 See also Nix v. Whiteside,
 
 475 U.S. 157, 164, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) (where Court wrote that the due process right of a criminal defendant to testify in his own behalf “has long been assumed”).
 

 A defendant’s choice to testify can be the most crucial decision in a criminal case. The Supreme Court recognized in
 
 Rock
 
 that “the most important witness for the defense in many criminal cases is the defendant himself.” 483 U.S. at 52, 107 S.Ct. 2704. The defendant’s presence on the stand gives him the “opportunity to have the jury observe his demeanor and judge his veracity firsthand.”
 
 United States v. Walker,
 
 772 F.2d 1172, 1179 (5th Cir.1985). As the Supreme Court wrote in another context, “[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.”
 
 Green v. United States,
 
 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). While
 
 *297
 
 a defendant who decides to testify may actually decrease his chance of acquittal, nevertheless, “[t]he wisdom or unwisdom of the defendant’s choice does not diminish his right to make it.”
 
 Wright v. Estelle,
 
 572 F.2d 1071, 1079 (5th Cir.1978) (Godbold, J., dissenting). As with a defendant’s decision to represent himself under
 
 Faretta,
 
 there may be no good or rational reason informing a defendant’s decision to testify, but a defendant’s
 

 desire to tell “his side” in a public forum may be of overriding importance to him. Indeed, in some circumstances the defendant, without regard to the risks, may wish to speak from the stand, over the head of judge and jury, to a larger audience. It is not for his attorney to muzzle him.
 

 Wright v. Estelle,
 
 572 F.2d at 1078 (Godbold, J., dissenting).
 

 The right to testify includes the right to testify fully, without perjury, to matters not precluded by a rule of evidence. See
 
 Scott,
 
 909 F.2d at 491 (observing that the right to testify “does not extend to testifying
 
 falsely
 
 ”) (quoting
 
 Nix v. Whiteside,
 
 475 U.S. at 173, 106 S.Ct. 988). Counsel may not cut off a defendant’s testimony for tactical reasons without the defendant’s consent. The Seventh Circuit has described the function of a lawyer confronted with a client who wishes to testify against the lawyer’s advice:
 

 When a defendant asserts that he desires to exercise his constitutional right to testify truthfully, counsel’s duty is to inform the defendant why he believes this course will be unwise or dangerous. If a defendant insists on testifying, however irrational that insistence might be from a tactical viewpoint, counsel must accede ... [A] defendant’s personal constitutional right to testify truthfully in his own behalf may not be waived by counsel as a matter of trial strategy
 

 United States v. Curtis,
 
 742 F.2d 1070, 1076 (7th Cir.1984).
 
 [2]
 

 Most of the matters about which Wilson wished to testify were relevant to the charges. There is no suggestion that he intended to testify falsely. No rule of evidence precluded the proposed testimony. Defense counsel should have acceded to her client’s wishes. Instead of forcing Wilson to choose between testifying further and keeping his attorney, the trial court should have ordered Wilson’s attorney to continue with the direct examination. As one court has observed,
 

 [rjequiring an attorney against his better judgment to examine his client places no unfair burden on the attorney: an attorney is always faced with the burden of developing his trial strategy in light of what evidence is available and presented in court. Nor is a defendant ordinarily prejudiced when he is represented by an attorney who believes, con
 
 *298
 
 trary to the defendant, that the latter should not testify.
 

 People v. Robles,
 
 2 Cal.3d 205, 85 Cal.Rptr. 166, 466 P.2d 710, 716-17 (1970). Having an attorney conduct the examination was preferable to allowing Wilson testify in narrative form, a procedure condoned when a client intends to give perjurious testimony.
 
 See Florida Bar v. Rubin,
 
 549 So.2d 1000 (Fla.1989);
 
 Sanborn v. State,
 
 474 So.2d 309, 312-13 (Fla. 3d DCA 1985). With an attorney directing the examination, there is less of a risk of a defendant meandering into areas that might devastate the defense.
 

 On this record, we cannot say that the loss of Wilson’s testimony was harmless error.
 

 We therefore reverse and remand for a new trial.
 

 WARNER and CIKLIN, JJ., concur.
 

 [1]
 

 . The state also offered similar fact evidence about a 2000 incident at the library.
 
 See
 
 § 90.404(2), Fla. Stat. (2006). The introduction of this evidence is not raised as a point on appeal.
 

 [2]
 

 . Judge Godbold's dissent in
 
 Wright,
 
 572 F.2d at 1079, contains this quote which well describes the function of defense counsel in advising a client whether or not to testify:
 

 Counsel should weigh these considerations and decide in the first instance whether or not he thinks the defendant ought to testify. That decision should be told to the defendant, with the reasons for it. Counsel may properly urge the defendant that it is unwise or dangerous for him to take the stand. However, if a defendant wishes to testify despite advice to the contrary, it is necessary to yield to his stubbornness.... Counsel should always clearly outline to the defendant the hazards of his testifying (whether or not counsel wants to put him on). But if this fails to daunt the client, and if counsel's advice against testifying fails to persuade him, the client should be allowed to testify.
 

 (quoting A. Amsterdam,
 
 Trial Manual for the Defense of Criminal Cases
 
 § 390, at 1-390 (2d ed. 1971)).