JACOBUS, J.
The appellant, Travis Edwards, appeals the judgment and sentence entered after a jury returned a verdict finding him guilty of first-degree premeditated murder and kidnapping. Edwards raises four points on appeal, contending that the court erred by: (1) permitting Edwards’ defense counsel to waive his right to testify at trial; (2) permitting defense counsel to present an insanity defense over Edwards’ objection; (3) denying Edwards’ motion to discharge his defense counsel as a result of a conflict of interest; and (4) denying Edwards’ pro se request to remove shackles and jail attire before trial. We find that Edwards’ contentions are meritorious, reverse his judgment and sentence, and remand the case for a new trial.

Factual Background

Edwards is a chronic paranoid schizophrenic who began experiencing delusions in his early twenties. He believes, based on revelations from God, that the government and police are corrupt and involved in organized crime. Edwards further believes that because he is aware of the corruption inside the government, his life *370 is in danger and the police have him under constant surveillance. In 1999, his mother initiated guardianship proceedings and, as a result, it was determined that Edwards was incapacitated and a limited guardianship was entered. The court appointed Edwards’ twin brother, Brent, as his guardian and Edwards moved in with Brent and his girlfriend, Karen Muskovitz, at Brent’s home in Melbourne.
In December of 2003, Brent was arrested and taken to the Brevard County Jail, leaving Muskovitz alone with Edwards. As a result of his paranoid condition, Edwards believed Muskovitz was a plant for the mafia and had visions of her hanging a cloth on a laundry line in the house as a signal to a hit squad to initiate an attack on him. When Edwards witnessed Musko-vitz hanging clothes up in the house he believed he had confirmation of his vision and strangled her to death. Sometime after the murder, Brent’s friend, Jerry Dunn, arrived at the house. Edwards believed Dunn was part of the conspiracy against him and took Dunn hostage with a pistol. After an ensuing stand-off with the police, Edwards was taken into custody and later charged with first-degree premeditated murder, kidnapping with a firearm, and possession of a firearm by a convicted felon. Edwards was initially appointed a public defender.
Needless to say Edwards’ competency was an issue throughout the proceedings. After initial competency evaluations in August of 2004, Edwards was declared incompetent to proceed to trial, and transferred to the Florida State Hospital for treatment. After a period of treatment, his treating psychologist believed he was competent to proceed and proposed transferring Edwards back to Brevard County for a competency proceeding. However, before Edwards was transported, the psychologist changed her opinion, concluding that he was no longer competent to proceed. Sometime later, Edwards’ psychologist again felt he was competent to stand trial and no longer met the criteria for continued involuntary commitment. As a result, Edwards was transferred to Bre-vard County, and a competency hearing was held in December of 2005. At that time, he was declared competent to stand trial. Because he was not indigent, Edwards’ professional guardian, who had replaced his brother as guardian, retained private counsel to represent him.
After he was hired, Edwards’ attorney filed a notice of intent to rely on the insanity defense. At a hearing in June of 2008, Edwards requested to address the court and informed the trial judge that he did not wish to pursue the insanity defense and the actions that led to his arrest were a consequence of his fear that Dunn and his “mob boss Dad” were a threat to his life. Edwards further stated that if his attorney insisted upon pursuing the insanity defense, he would request court-appointed counsel since he could no longer afford to hire an attorney. Edwards’ attorney responded that in light of the limited guardianship that was established in 1999, he believed that only the guardian was competent to discharge him, and the guardian did not want him removed from the case. In light of apparent conflict between Edwards and his guardian, the trial judge appointed a guardian ad litem to represent Edwards’ interest in resolving the conflict. Several months after the hearing, Edwards’ criminal defense attorney moved for another competency determination. The court appointed two psychologists to conduct an evaluation. One of the psychologists felt that Edwards was not competent to stand trial. The other believed that he adequately met all the necessary factors to stand trial but still questioned Edwards’ competency to reject an insanity defense or to waive counsel.
*371 In January of 2009, the court held a hearing, where the psychologists, the guardian, and the guardian ad litem all testified. Ultimately, the court entered an order finding Edwards competent to stand trial and denying his motion to discharge counsel. As to Edwards’ capacity to discharge his attorney, the court found that his mental illness deprived him of the ability to analyze the facts and law so as to be able to make decisions concerning counsel. The trial court relied on Indiana v. Edwards, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), where the Supreme Court held that a defendant may be competent to stand trial but lack the capacity for self-representation. The trial court also noted that as a result of the limited guardianship, Edwards did not have the ability to contract or terminate a contract with his attorney.
The case proceeded to trial in October of 2009. At the beginning of the trial, Edwards’ attorney advised the court that he wanted Edwards tried in his jail clothes with shackles. When the court asked if Edwards joined in the request, counsel responded that he did not know. Edwards was asked and he informed the court that he wished to wear street clothes, not prison clothing, and asked the court for a ruling on the issue. The court responded that the decision was a strategic one made by counsel and that Edwards had been found to lack the capacity to make a decision regarding the matter. As a result, Edwards was tried in jail attire and shackles.
At the conclusion of the State’s case, the trial court explained to Edwards his right to testify. Edwards’ attorney responded that it was his strategy that Edwards would not testify, that Edwards disagreed with him but that Edwards’ guardian supported the decision, and that it was a decision Edwards was not competent to make. Although Edwards expressed a desire to address the court, his request was denied and ultimately he was not permitted to testify on his own behalf. The jury found Edwards guilty of first-degree murder and kidnapping, and he was sentenced to concurrent life sentences on both counts.

Edwards’ Competency to Stand Trial

Before addressing Edwards’ appellate claims, we note that Edwards’ competency to stand trial in this case appears questionable at best. The United States Supreme Court has long held “that the criminal trial of an incompetent defendant violates due process.” Medina v. California, 505 U.S. 437, 453, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (citing Drope v. Missouri, 420 U.S. 162, 172-73, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). The test for determining a defendant’s competency is “whether a criminal defendant ‘has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him.’ ” Drope, 420 U.S. at 172, 95 S.Ct. 896 (quoting Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). Whether a defendant has the necessary rational understanding turns on whether “his mental condition precludes him from perceiving accurately, interpreting, and/or responding appropriately to the world around him.” Lafferty v. Cook, 949 F.2d 1546, 1551 (10th Cir.1991). Thus, a defendant may be deemed incompetent, despite an intellectual understanding of the charges against him, if his impaired sense of reality undermines his judgment and prevents him from making rational decisions regarding his defense. See United States v. Hemsi, 901 F.2d 293, 294-96 (2d. Cir.1990) (affirming the defendant’s commitment despite his intellectual understanding of the proceed *372 ings against him because his psychiatric disorder and impaired sense of reality prevented him from cooperating rationally with his lawyer).
In this case, Edwards has suffered from paranoid schizophrenia since his early twenties. His competency was questioned on numerous occasions during the pretrial proceedings. When he was ultimately determined competent to stand trial, at least one of his psychologists disagreed. Even the psychologist who felt Edwards was competent remained concerned about Edwards’ ideations and opined that he could testify relevantly only to the extent that the “Why” question was avoided. At trial, Edwards believed that his lawyers, the prosecutors, and the State’s witnesses were all part of a mob conspiracy seeking to cover up the truth and deny him a fair trial. These delusions strongly suggest that Edwards’ perceptions and understandings were not grounded in reality and, thus, he would not meet the Dusky standard regardless of his apparent cognitive ability to communicate with defense counsel or his factual understanding of the trial proceedings in general. However, that being said, Edwards has not challenged the order finding him competent to stand trial and, thus, the issue is not before the court.

Edwards’ Competency to Make Decisions Regarding His Defense

On appeal, Edwards questions whether the trial court applied the correct standard in determining that he was competent to stand trial, but lacked the capacity to exercise certain rights and make decisions regarding his defense. The United States Supreme Court has yet to address the issue of whether a heightened level of competency is required in order for a represented defendant to exercise the rights and make the decisions at issue in this case; however, it has addressed the issue of whether the waiver of certain constitutional rights requires a heightened standard of competency than is required to stand trial. The Court has concluded the same standard should apply in both cases. See Godinez v. Moran, 509 U.S. 389, 395-403,113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (holding the Dusky standard applies to a defendant who decides to waive his right to counsel and plead guilty). Nonetheless, the Court has imposed a higher competency standard where the defendant seeks to conduct his trial defense without representation. See Edwards, 554 U.S. at 174, 128 S.Ct. 2379 (finding that exercising the right to self-representation requires a greater level of mental competence than set by the Dusky standard).
It was the heightened standard of competency from Edwards that the trial court relied on in concluding that while Edwards was competent to stand trial, he was not competent to make decisions regarding: (1) whether to testify; (2) whether to assert the insanity defense; (3) whether to discharge his attorney; and (4) whether to wear jail attire and shackles during trial. The court’s reliance on Edwards was misplaced.
The defendant in Edwards sought to exercise his right of self-representation based on Faretta.[1] The Edwards Court concluded that the Dusky standard was insufficient to evaluate whether a defendant seeking to represent himself at trial is competent to do so. 554 U.S. at 177-78, 128 S.Ct. 2379. In reaching this conclusion, the Court noted that the Dusky standard assumed representation by counsel and emphasized its importance, whereas the Faretta decision was based in part on pre-existing state law which was consistent with a competency limitation on the right *373 to self-representation. Id. at 174-75, 128 S.Ct. 2379. The Edwards Court also recognized that a person with a mental illness who represents himself can wreak havoc on the system and, therefore, provided that a state may adopt a higher level of competency in deciding if a defendant can represent himself at trial. Id. at 175-78, 128 S.Ct. 2379.
In this case, Edwards never requested to represent himself. Instead, he wanted to discharge his lawyers and have a court-appointed lawyer who would abide by his requests to not raise the insanity defense and permit him to tell his story to the jury. The Edwards decision does not require a heightened standard of competency where a represented defendant seeks to exercise the rights or make the decisions that Edwards sought to make in this case. Assuming Edwards was competent to stand trial, we likewise assume that, under Edwards, he was competent to make decisions regarding his defense. Having reached this conclusion, we next consider whether the decisions made by defense counsel in this case are the sort of strategic decisions that may be made by defense counsel regardless of any competency determination or whether they implicate fundamental rights and, thus, must be left ultimately to the defendant.

Counsel’s Waiver of Edwards’ Right to Testify

Florida courts have recognized that the right to testify is a fundamental right. See McCray v. State, 71 So.3d 848, 872 (Fla.2011) (citing Rock v. Arkansas, 483 U.S. 44, 51-52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)); Wilson v. State, 12 So.3d 292, 296 (Fla. 4th DCA 2009) (citations omitted). Further, at least one Florida court appears to have concluded that the decision to testify belongs to the defendant alone. See Wilson, 12 So.3d at 296-97.
In Wilson, the Fourth District Court of Appeal noted that although a defendant who decides to testify may actually decrease his chances of acquittal, this possibility does not diminish his right to make the choice and his attorney may not silence him. Id. at 297. The court further noted that “counsel’s duty is to inform the defendant why he believes [testifying would] be unwise or dangerous,” and if the “defendant insists on testifying, however irrational that insistence might be from a tactical viewpoint, counsel must accede” because the right to testify is personal to the defendant and “may not be waived by counsel as a matter of trial strategy.” Id. (quoting United States v. Curtis, 742 F.2d 1070, 1076 (7th Cir.1984)).
In this case, Edwards made it abundantly clear to the court that he wished to testify. He apprised the court of his wishes on more than one occasion, including after the State rested its case. Nonetheless, the court acceded to his attorney’s strategic decision not to put Edwards on the stand. This was error. Edwards should have been permitted to address the jury as he wished because while defense counsel had the obligation to point out to Edwards the reasons for not testifying, the ultimate decision to testify or not rested with Edwards.

Presenting the Insanity Defense over Edwards’ Objection

The issue of a defense attorney pursuing an insanity defense over his client’s objection has not been directly addressed in Florida. However, the Supreme Court of Delaware faced a similar issue in Cooke v. State, 977 A.2d 803 (Del.2009), which is instructive here.
Cooke was charged with rape, burglary, arson, and two counts of murder. Id. at 812. He was ultimately convicted and sen *374 tenced to death. Id. at 839-40. During the course of the proceedings, Cooke’s defense counsel proceeded with a strategy of seeking a verdict of guilty but mentally ill, which is available to a defendant in Delaware. Id. at 812. Cooke was vehemently opposed to that strategy and insisted that he was innocent and not mentally ill. Id. Cooke advised the court on numerous occasions that his lawyers were proceeding in a manner contrary to his wishes and that he wanted to maintain his innocence and tell the jury his story. Id. at 812-32. The trial court held several hearings on the issue and ultimately permitted Cooke’s counsel to proceed to seek a verdict of guilty but mentally ill. Id.
On appeal before the Delaware Supreme Court, Cooke asserted that his lawyers’ insistence of presenting evidence that he was guilty but mentally ill violated his constitutional rights under the Sixth Amendment. Id. at 840. In analyzing this issue, the court first noted that “[t]he Sixth Amendment to the United States Constitution provides that ‘[i]n all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defense.’ ” Id. (quoting Amend. VI, U.S. Const.). The court then noted that this right to counsel was the right to effective assistance, that the purpose of this right is to ensure that the trial proceedings are fair, and that counsel had “the authority to manage the day-to-day conduct of the defense.” Id. at 840-41 (footnote omitted). The court further noted that while defense counsel had a duty to consult with his client in regard to “important decisions,” this did not require that counsel obtain the defendant’s approval prior to “every tactical decision.” Id. at 841 (footnote omitted). However, the court went on to say:
[Cjertain decisions regarding the exercise or waiver of basic trial and appellate rights are so personal to the defendant “that they cannot be made for the defendant by a surrogate.” In Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the United States Supreme Court recognized that a criminal defendant has “ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.” Such choices “implicate inherently personal rights which would call into question the fundamental fairness of the trial if made by anyone other than the defendant.” As to these decisions on the objectives of the representation, a lawyer “must both consult with the defendant and obtain consent to the recommended course of action.” These rights cannot be waived by counsel without the defendant’s fully-informed and publicly-acknowledged consent.
Id. at 841-42 (footnotes omitted). In light of these principles, the court concluded that defense counsel’s pursuit of the guilty but mentally ill verdict “deprived Cooke of his constitutional right to make the fundamental decisions regarding his case.” Id. at 842.
In Florida, our Rules of Professional Conduct provide that an attorney undertaking the representation of his client has a responsibility to abide by his client’s decisions'concerning the objectives of the representation. In a criminal case, the client has the ultimate right to decide whether or not to enter a plea, waive a jury trial, or testify. R. Regulating Fla. Bar 4-1.2(a). Here, although his guardian retained the criminal defense attorney, it was Edwards who was the client. Further, while insanity is an affirmative defense in Florida, the decision to raise the defense is akin to a plea decision. See State v. Tribble, 179 Vt. 235, 892 A.2d 232, 248 (2005) (noting “that Vermont’s proce *375 dure for raising an insanity defense is equivalent to a plea of not guilty by reason of insanity”). As such, the decision rests with the defendant alone. See Cooke, 977 A.2d at 842-43 (recognizing that the plea decision is the sort of fundamental decision that must be left to the defendant and asserting the defense of “guilty but mentally ill” over the defendant’s objection effectively negated his choice). By allowing counsel to assert the defense over Edwards’ objections, the trial court was in error and doing so requires a reversal.

The Remaining Issues Raised by Edwards

Because we are reversing for a new trial and Edwards is now indigent, the issue of Edwards’ right to discharge privately retained counsel has become moot. On retrial, Edwards should be appointed a public defender to represent him. However, because the issue of Edwards’ attire during trial may arise again, this court notes that a defendant may not to be compelled to proceed to trial in prison garb over his objection. See Estelle v. Williams, 425 U.S. 501, 512, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (“[T]he State cannot ... compel an accused to stand trial before a jury while dressed in identifiable prison clothes.”). Finally, on remand, it is suggested that the trial court revisit the issue of Edwards’ competency.
Edwards’ judgment and sentence are VACATED and this matter is REMANDED to the trial court for a NEW TRIAL.
ORFINGER, C.J. and COHEN, J., concur.

. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).