**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alvin Gregory SCOTT,**
**Defendant–Appellant.**

**No. 89–8520.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 21, 1990.

John W. Stokes, Lawrenceville, Ga., for defendant-appellant.

Robert L. Barr, U.S. Atty., N.D. Ga., F. Gentry Shelnutt, Jr., Candiss L. Howard, Asst. U.S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before FAY and JOHNSON, Circuit Judges, and GIBSON *, Senior Circuit Judge.

FAY, Circuit Judge:

Defendant-appellant Scott appeals his conviction for possession of a firearm after having been convicted of a felony, in violation of Title 18 U.S.C. sections 922(g) and 924(e). As grounds for reversal, Scott asserts that the district court deprived him of either his right to counsel or his right to testify by forcing him to choose between

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa-

tion.

either proceeding with counsel and not testifying or proceeding without counsel. After review of the record, we find that the trial judge committed error. Accordingly, we VACATE and REMAND for a new trial.

## BACKGROUND

Defendant-appellant Scott was charged by a grand jury indictment with possessing a firearm after having been convicted of a felony involving violence, in violation of Title 18 U.S.C. sections 922(g) and 924(e). Scott pleaded not guilty to the charges, and the court appointed the Federal Defender Program, Inc. to represent Scott. On March 3, 1989, trial commenced; both parties presented opening statements and the government presented its entire case.

On March 6, the next day of trial, Scott's attorney moved to withdraw from the case for reasons which she believed could not be disclosed to the court. The court discussed the situation with Scott, his attorney, and the prosecutor in an effort to determine an appropriate course of action. Eventually, the district judge presented Scott with a choice: either to proceed with counsel with the caveat that Scott could be kept off the witness stand, if his attorney so desired, or to proceed pro se. After conferring with his attorney and being warned of the consequences of proceeding pro se, Scott decided to conduct his defense without an attorney. Scott was convicted and sentenced to fifteen years.

## DISCUSSION

We are confronted in this case with the dilemma that a trial judge faces when counsel for the defendant believes that she has an ethical obligation to the court to withdraw from the case and perceives a duty to her client to ensconce the reason for withdrawal. At issue in this case is the propriety of the trial judge's solution to this ethical predicament: to give Scott a choice of either proceeding pro se or proceeding with counsel, who could prevent Scott's testifying. In deciding this issue, we must examine the scope of a defendant's right to counsel, as well as the extent of a defendant's right to testify, and determine whether the trial judge abridged either or both.

The right of a criminal defendant to be represented by counsel is firmly rooted in our system of justice. It is a right guaranteed by the Sixth Amendment to the Constitution, which states, "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." *Johnson v. Zerbst*, 304 U.S. 458, 463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938) (footnote omitted). As the Supreme Court has stated,

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 63–64, 77 L.Ed. 158 (1932). This is not to say that a criminal defendant is barred from waiving his right to counsel. Just as an accused is entitled to the assistance of counsel, so also is a criminal defendant guaranteed the right to self-representation. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). "The right to defend is personal. The de-

fendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage." *Id.* at 834, 95 S.Ct. at 2541. It is imperative, however, that before allowing an accused to exercise his right to self-representation, the court fulfill its "serious and weighty responsibility" of determining whether the accused has knowingly and intelligently waived the right to counsel. *Johnson,* 304 U.S. at 465, 58 S.Ct. at 1023; *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. Such a determination is case specific, depending upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused, and must be made a part of the record. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, *Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023.

Unlike a criminal defendant's right to assistance of counsel, an accused's right to testify is not explicitly provided for in the Constitution. In fact, under common law, a criminal defendant was deemed incompetent to testify because of his interest in the outcome of the litigation. *See Rock v. Arkansas,* 483 U.S. 44, 49, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37 (1987) (citing 2 J. Wigmore, Evidence §§ 576, 579 (J. Chadbourn rev.1979); *Ortega v. O'Leary,* 843 F.2d 258, 260 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988). Eventually, this rule of incompetency was abrogated by statute, *see* Act of Mar. 16, 1878, ch. 37, 20 Stat. 30 (codified as amended at 18 U.S.C. § 3481 (1988)), and the Supreme Court recognized that "[e]very criminal defendant is privileged to testify in his own defense." *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). Over time, this "privilege" apparently has developed into a Constitutional right protected by the Fifth, Sixth, and Fourteenth Amendments. In *Rock v. Arkansas,* the Supreme Court, in addressing a state's restriction on the use of posthypnotic testimony, stated, "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.'" 483 U.S. at 51, 107 S.Ct. at 2709 (quoting *Faretta,* 422 U.S. at 819 n. 15, 95 S.Ct. at 2533 n. 15)). The Court then cited the Fourteenth Amendment to the Constitution, averring that "the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include[s] a right to be heard and offer testimony." *Id.* Additionally, the Court found that the Compulsory Process Clause, which grants a defendant the right to call witnesses in his favor, gives rise to an accused's right to testify. "In fact, the most important witness for the defense in many criminal cases is the defendant himself. There is no justification ... for a rule that denies an accused the opportunity to offer his own testimony." *Id.,* 483 U.S. at 52, 107 S.Ct. at 2709. Finally, the Court, relying on *Harris v. New York,* 401 U.S. at 225, 91 S.Ct. at 645, in which the Court stated that "[e]very criminal defendant is privileged to testify in his own defense or refuse to do so," found that the right to testify is a necessary corollary to the Fifth Amendment's guarantee against compelled testimony.

■ It is clear then that a defendant's right to testify "is now a recognized fundamental right." *Ortega v. O'Leary,* 843 F.2d at 261. *See Faretta,* 422 U.S. at 819 n. 15, 95 S.Ct. at 2533 n. 15. Accordingly, the right to testify is personal and cannot be waived by counsel. *United States v. Martinez,* 883 F.2d 750, 756 (9th Cir.1989), *petition for cert. filed,* No. 89–7539 (May 17, 1990); *United States v. Long,* 857 F.2d 436, 447 n. 9 (8th Cir.1988); *Ortega,* 843 F.2d at 261; *United States v. Curtis,* 742 F.2d 1070, 1076 (7th Cir.1984) (per curiam), *cert. denied,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986); *see also Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) ("It is .... recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."); *Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1,

97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring) ("Only such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make.").[1]

■ The right to testify, however, is not without limitations. A defendant who testifies must comply with restrictions which are not "arbitrary or disproportionate to the purposes they are designed to serve." *Rock v. Arkansas*, 483 U.S. at 56, 107 S.Ct. at 2711; *see also Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) ("[T]he accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."). Moreover, the right to testify "does not extend to testifying *falsely*." *Nix v. Whiteside*, 475 U.S. 157, 173, 106 S.Ct. 988, 997, 89 L.Ed.2d 123 (1986) (emphasis in original); *see Harris v. New York*, 401 U.S. at 225, 91 S.Ct. at 645. However, whether counsel may keep a defendant entirely off the stand if counsel believes that defendant will commit perjury has not yet been addressed by the Court.[2] This court need not reach the issue, for the

---

1. The former Fifth Circuit in *Wright v. Estelle*, 572 F.2d 1071 (5th Cir.) (en banc), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978), was given the opportunity to address the issue of whether a defendant has a personal constitutional right to testify. While the plurality affirmed the prior panel's ruling that defense counsel's waiver of defendant's right to testify was harmless error, Judges Thornberry, Clark, Roney, Gee, and Hill filed a specially concurring opinion in which it was advocated that the decision regarding whether a defendant will testify is properly allocated to the defendant's attorney and not to the defendant:

   This court's history is filled with the recognition of the value of an attorney. No one could seriously contend that a defendant is in a better position to dictate trial strategy than his attorney. Moreover, a court-appointed attorney owes a duty to society to see that his client is given the best possible defense within the law. No attorney could discharge this duty if he must yield to the personal demands of his client.

   572 F.2d at 1073.

   Judge Godbold, joined by Judges Goldberg and Tjoflat, filed a strong dissent arguing that the right to testify is a constitutional right which is personal to a criminal defendant:

   In making the choice on whether to testify, just as the choice on whether to represent himself, the defendant elects whether to become an active participant in the proceeding that affects his life and liberty and to inject his own action, voice and personality into the process to the extent the system permits.
   . . . .
   . . . . To deny a defendant the right to tell his story from the stand dehumanizes the administration of justice. I cannot accept a decision that allows a jury to condemn to death or imprisonment a defendant who desires to speak, without ever having heard the sound of his voice.

   *Id.* at 1078. *Rock v. Arkansas* apparently resolved this controversy: "Even more fundamental to a personal defense than the right of self-representation . . . is an accused's right to present his own version of events in his own words." 483 U.S. at 52, 107 S.Ct. at 2709.

2. In *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), a criminal defendant convicted of murder sought a writ of habeas corpus based on the purported ineffective assistance of trial counsel. During the pretrial stages of litigation, Whiteside's counsel learned that Whiteside had not seen a weapon in the hand of the person he had killed. Shortly before trial, however, Whiteside informed his attorney that he was going to testify that he saw a gun in the victim's hand. Whiteside's lawyer warned Whiteside that if he felt that Whiteside was committing perjury, he would have to reveal that fact to the court and would seek to withdraw. At trial, Whiteside testified that he had not seen a gun in the victim's hand.

   The Eighth Circuit granted relief to Whiteside, holding that the attorney's threat to breach client confidences by informing the court of the intended perjury breached the standards of effective representation set down in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Supreme Court reversed, holding that whatever the extent of a right to testify, such right cannot include the right to commit perjury. The Court further noted that Whiteside's counsel followed ethical standards in attempting to dissuade Whiteside from testifying falsely.

   The question not addressed by the Court is whether an attorney infringes on a criminal defendant's constitutional rights when that lawyer prevents a criminal defendant from testifying altogether if the attorney believes the defendant will commit perjury. *See Nix*, 475 U.S. at 186 n. 5, 106 S.Ct. at 1004 n. 5 (Blackmun, J., concurring) ("Whiteside was not deprived of the right to testify in his own defense, since no suggestion has been made that Whiteside's testimony was restricted in any way beyond the fact that he did not claim, falsely, to have seen a gun in [victim's] hand."); *cf. United States ex. rel. Wilcox v. Johnson*, 555 F.2d 115 (3rd Cir.1977) (holding that defendant's right to testify violated

record before us shows neither that the conflict between Scott and his attorney involved Scott's intention to commit perjury, nor that Scott's attorney would have attempted to prevent Scott's testifying.

▪ In this case, Scott's counsel moved to withdraw shortly after the prosecution rested its case. Counsel, perceiving an ethical obligation not to reveal the confidences of her client, could not reveal the reason for withdrawal. While "mak[ing] the record clear" that the court did not know with certainty the reason for the motion, the district court assumed that Scott's attorney made the motion because she discovered that Scott intended to commit perjury. R3–71.[3] Consequently, the court determined that the problem would recur if it appointed substitute counsel.[4] Rather than ruling on counsel's motion to withdraw, however, the court presented Scott with a choice: "either Ms. Kearns stays in the case and she decides what evidence to put on, and if she decides not to call you, that's it. Or, if you wish to, you may go forward and put on any evidence that is otherwise relevant, yourself, but you will do that without a lawyer." R3–76. We find error in the court's attempted solution to this difficult problem.

▪ Nowhere in the record does Scott or his attorney state that Scott desired to testify and that his attorney intended to keep him off the stand. Any allusion to the existence of such a situation was the result of speculation and conjecture.[5] This

when presented with the choice of either not testifying or going pro se after counsel advised court of the likelihood of perjury). *But see United States v. Curtis,* 742 F.2d at 1076 (Defendant has constitutional right to testify which cannot be waived by counsel as a matter of trial strategy. Defendant's constitutional rights were not violated, however, when counsel refused to put him on the stand because of intended perjury). Other questions which were not answered in *Nix* are the degree to which counsel must "know" that defendant will testify falsely, and the effect of the Fifth Amendment on revelation of client confidences relating to perjury. *See* Freedman, *Client Confidences and Client Perjury: Some Unanswered Questions,* 136 U.Pa.L. Rev. 1939 (1988).

3. After Scott's counsel made her motion to withdraw, the court stated to opposing counsel, "Well, if we assume that the reason you're thinking about, and the reason I'm thinking about, is the reason, that reason could very well present itself to another attorney." R3–67. To the prosecutor's question of whether the court could "keep [Scott] off the stand," the district court responded, "No, I don't think I can do that. The only practical solution that I know of is to invite [Scott] in here and to explain to him the penalties of perjury...." R3–69–70. Additionally, the court "infer[red]" that [Scott's] lawyer [was] requesting to withdraw because what [Scott] [was] asking her to do would put her in a position of doing something that's unethical." R3–76. "To put it very simply, it seems to me that you wish to testify, and it seems to me that something you wish to testify about she believes based on her investigation in the case is untrue." R3–85.

4. Ms. Kearns [counsel for defendant]: Okay. My feeling is, as I expressed to the court earlier but not on the record, is that I—that I think it is possible that another lawyer may not have the same conflict or dilemma that I have, and in part the problem that Mr. Scott and I are having is a product of a—a large part of it is based upon discussions that we had during the pretrial stages of this case, and a lot of—well, perhaps some people that I talked to, or evidence that I discovered at that point that aren't—that is not necessary for somebody else to go through if they were picking up the case at this stage, but something that I can't set aside and in large part that is why, you know, I have a problem that I am not confident another lawyer coming in would have.

The Court: Someone else may have a different view of this, but I interpret what you just said to me as saying—as meaning this: if another lawyer does not do what you did, he may not learn what you have learned, so as to put him in the position of knowing that, what your client wants to do is wrong, and I'm not going to aid or abet that. He doesn't have a constitutional right to get another lawyer and hope that he doesn't discover the truth. If that's what we're talking about.

Ms. Kearns: (nods head affirmatively). R3–83–84.

5. Scott did ask the court the following question in response to the court's implication that perjury was involved: "Well, if I wanted to testify to something that I was given advice to—not to testify to it wouldn't be to my advantage—from my attorney, and if we could not, you know, reconcile that difference, then that would not give me the right to want another attorney[?]" R3–85. However, this statement does not amount to a revelation of the problems Scott and his attorney were experiencing; it was merely an inquiry regarding the rule of law that the trial judge had previously proposed.

court simply cannot determine from the record what the problem between counsel and client was. What this court can determine from the record is that Scott had absolutely no desire to proceed without counsel.[6] Conversely, this court cannot determine what the precise problem between Scott and his attorney was or whether it would have recurred if another attorney had been appointed. To advise Scott that he could be precluded from testifying, without confirmation that Scott intended to commit perjury,[7] or could proceed pro se impermissibly forced Scott to choose between two constitutionally protected rights. *See Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968) ("[W]e find it intolerable that one constitutional right should have to be surrendered in order to assert another."); *Maynard v. Meachum*, 545 F.2d 273, 278

(1st Cir.1976) ("A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive."). It was the trial court's responsibility to rule on counsel's motion to withdraw, not to speculate as to Scott's rights under circumstances not yet established.[8] Since counsel confirmed that another attorney that did the same investigative work as had she would experience the same problem, it was incumbent upon the trial judge to deny counsel's motion.[9]

## CONCLUSION

In this case, the trial judge impermissibly forced defendant to choose between two constitutional rights: the right to testify and the right to counsel. We concede that a much more difficult case would have

---

6. The Court: Now, ... understanding the choices I have given you, do you still wish to go pro se?
   The Defendant: Yes, sir.
   The Court: Okay. Is there anything else that you want to ask me about or say to me?
   The Defendant: Yes, sir. I'd like to say at this time that I do want another lawyer, and I feel that the conflict that I have with Ms. Kearns will not occur with another lawyer. R3–80–81.

7. We note that on more than one occasion the district court invited Scott to explain the reason for the conflict. For example, when the court was discussing the likelihood of another attorney experiencing the same conflict with Scott, the court explained,

   > You're perfectly welcome to tell me the details, and try to convince me that that won't [happen if new counsel is appointed], but you're not obliged to, and if you tell me that, the reasons and if part of it is that it implicates you in bad intent or purpose, that's on the record for all purposes, so it's not something that's easily done for you to tell me, but if there's some real innocent reason that perhaps hasn't occurred to me, you can tell me about it, if you want to.

   R3–81–82. The court again requested Scott to explain the situation during a conversation regarding his right to proceed pro se: "The way she [Scott's attorney] has asked me to withdraw is because of an ethical consideration. If it is other than that, I will be glad to hear from you." R3–87. The court warned Scott, however, that "[i]f you tell me something in here that turns out later not to be the truth, I am under no obligation to keep this record sealed after this

case is over with, and so what is on this record can be known by the government later.... So what's your pleasure? Do you want to talk to me some more about it on the record out of [the prosecutor's] presence?" R3–82–83.

We cannot infer from Scott's silence that the conflict between Scott and his attorney involved Scott's intention of testifying falsely. U.S. Const. amend V. ("No person ... shall be compelled in any criminal case to be a witness against himself....").

8. We are not implying that the court should have required Scott's counsel to divulge the confidences of her client. Rather, we hold simply that without more information, the court had no basis on which to grant the motion to withdraw. The decision regarding exposure of the problems that client and counsel are experiencing lies with counsel and is governed by the rules of professional conduct adopted by the state bar. If counsel feels that the rules require nondisclosure, then counsel's motion to withdraw will likely be denied, depending on the circumstances of the case. If the motion is denied, and the problem involves the perjurious nature of defendant's testimony, counsel must be extremely careful to protect the defendant's rights while simultaneously complying with the ethical standards imposed upon lawyers practicing in the state.

9. In *Morris v. Slappy*, 461 U.S. 1, 14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983), the Supreme Court held that while a defendant is entitled to the assistance of counsel, the Sixth Amendment does not guarantee a " 'meaningful relationship' between an accused and his counsel."

resulted had it been established on the record that defendant intended to commit perjury.[10] However, the record in this case relieves us from deciding the more difficult questions which arise in that context. Accordingly, the judgment of conviction is VACATED and the case REMANDED for a new trial.

10. Legal scholars, as well as courts, have suggested various ways to deal with a defendant's intended perjury. One commentator suggests that in a case where defendant's counsel discovers defendant's intention to commit perjury after trial has begun, the attorney should request a recess, and the court should conduct an ex parte, in camera hearing before a judge other than the trial judge, so that the confidences of the client are revealed only to a disinterested jurist. Rieger, *Client Perjury: A proposed Resolution of the Constitutional and Ethical Issues,* 70 Minn.L.Rev. 121, 153–59 (1985). The same commentator proposes that the judge conducting the hearing should determine whether defendant's proposed testimony will be false beyond a reasonable doubt. *Id.* at 154. If the judge harbors any doubt about the falsity of defendant's testimony, the judge should instruct counsel to present defendant's testimony without incident. *Id.* If the judge has no reasonable doubt that defendant will commit perjury, then the judge should relieve counsel of any responsibility to put the witness on the stand. *Id.*

Another commentator has suggested that "the obligation of confidentiality, in the context of our adversary system, apparently allows the attorney no alternative to putting a perjurious witness on the stand without explicit or implicit disclosure of the attorney's knowledge to either the judge or the jury." Freedman, *Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions,* 64 Mich.L.Rev. 1469, 1477–78 (1966).

In *United States v. Long,* 857 F.2d 436 (8th Cir.1988), a criminal defendant's attorney disclosed to the trial court the possibility that his client would commit perjury. On appeal, defendant claimed that his attorney abandoned his role as defendant's advocate and coerced defendant not to testify by suggesting to the trial judge that defendant might commit perjury. The Eighth Circuit held that the determination whether the prejudice to defendant resulting from counsel's disclosure of potential perjury was undue must be determined at an evidentiary hearing during collateral attack of the conviction on a petition for habeas corpus. In so holding the court stated

[O]nce the possibility of client perjury is disclosed to the trial court, the trial court should reduce the resulting prejudice. It should limit further disclosures of client confidences, inform the attorney of his other duties to his client, inform the defendant of her rights, and determine whether the defendant desires to waive any of those rights.

The trial judge here acted primarily with these concerns in mind. The judge discussed the conflict with only the attorney and his client present. He prevented further disclosures of client confidences. He advised Jackson of his right to testify and determined that Jackson understood his rights and his attorney's ethical obligation not to place false testimony before the court. He advised Jackson that if he took the stand, his lawyer would be required to refrain from questioning Jackson on issues which the lawyer believed Jackson would perjure himself and that Jackson would have to testify in narrative form. He then directly asked Jackson if he wished to testify. We add that a trial court should also impress upon defense counsel and the defendant that counsel must have a firm factual basis before further desisting in the presentation of the testimony in question.

Under such a procedure, the chance for violations of the defendant's constitutional rights will be reduced, the revelation of further client confidences will be prevented, and the defendant can make a knowing waiver of her constitutional right to testify and to counsel. It will also be necessary to establish that the waiver was voluntary and that the defendant's rights were not violated prior to the waiver. Such inquiries, however, are best made at an evidentiary hearing.

857 F.2d at 446–47 (footnotes and citation omitted).

The Florida Supreme Court has apparently adopted the narrative approach. In *The Florida Bar v. Rubin,* 549 So.2d 1000 (Fla.1989), an attorney informed the court, albeit in uncertain terms, that his client intended to commit perjury, and sought to withdraw from the case. The court denied his motion to withdraw, but counsel refused to proceed to trial. He was subsequently incarcerated pursuant to a contempt order. The issue the Supreme Court addressed is whether a lawyer may disobey a court order that he or she believes to be erroneous. In answering this question in the negative, the Supreme Court noted that the decision of the Florida District Court of Appeal advising the attorney to use the narrative approach should have been followed. Such an approach allows counsel to place defendant on the stand and deliver his statement in the narrative form. Counsel may not use the perjurious testimony in closing argument. The Court reasoned that if the use of such an approach was later determined to be in violation of the attorney's responsibilities to the court, counsel would have a good, and possibly complete, defense insofar as counsel was following an order of the court.

We express no opinion as to which, if any, of      the solutions to this complex problem we favor.