******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MAURICE FRANCIS
(SC 19305)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued January 12—officially released July 7, 2015*

*John L. Cordani*, *Jr.*, assigned counsel, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Donna Mambrino* and *Richard J. Rubino*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

McDONALD, J. Following a jury trial, the defendant, Maurice Francis, was convicted of murder in violation of General Statutes § 53a-54a. Thereafter, the defendant challenged his conviction, claiming that he is entitled to a new trial because, among other things, the trial court improperly: (1) forced him to choose between his constitutional right to counsel and his constitutional right to testify on his own behalf, after defense counsel took the position that the defendant would be self-represented if he testified against their advice; and (2) dismissed a juror under the mistaken view that a juror's internal assessment of evidence during the course of trial constitutes improper deliberation on the verdict. The Appellate Court affirmed the judgment of conviction. *State* v. *Francis*, 148 Conn. App. 788, 791, 86 A.3d 1074 (2014). In his certified appeal to this court, the defendant challenges the Appellate Court's rejection of these two claims. We conclude that the defendant is entitled to a new trial because he was not represented by counsel during his testimony and he did not voluntarily relinquish his right to counsel. Accordingly, we reverse the Appellate Court's judgment.

The Appellate Court's opinion sets forth a detailed account of the evidence supporting the defendant's conviction for the murder of his girlfriend, Tashima Reddick, which is not directly relevant to the issues in this appeal and therefore need not be repeated. See id., 792–96. The record reflects the following facts and procedural history relevant to the issues before this court. After the defendant was charged with Reddick's murder, public defenders, William O'Connor and Bruce Lorenzen, were appointed to represent him. The trial court, *Gold, J.*, initially found the defendant incompetent to stand trial but restorable to competency. Physicians who later examined the defendant concluded that he was malingering. Subsequently, over defense counsel's repeated objections, the trial court, *Gold, J.*, and *Alexander, J.*, found the defendant competent to stand trial.

The issue of the defendant taking the stand first arose after the state objected to the defendant making statements on the record, although outside the presence of the jury, without being subject to cross-examination. The court, *Dewey, J.*, responded that, if the defendant wished to make statements, he could do so only if he chose to testify. The court noted that the defendant had been consulting with counsel in writing and that he should continue to cooperate with them. The next day, defense counsel noted for the record that they disagreed with the court's characterization of the defendant's consultations with them. Lorenzen stated that defense counsel had limited contact with the defendant, by the defendant's choice, and that the defendant's views could be characterized as not "reality based."

Lorenzen asserted that the defendant had not sought their advice on whether to testify and he questioned whether the defendant had the capacity to listen to any such advice. Lorenzen then stated that, "to the extent that [the defendant] does choose to take the stand, I would have to take the position that he is doing so uncounseled and in essentially . . . a manner in which he is representing himself." The defendant then interjected that he wanted to speak for himself because counsel was trying to "legally gag" him by saying that he has a mental disorder. The court reiterated to the defendant that he was required to speak through counsel.

At the close of the state's case-in-chief, defense counsel informed the court that the defendant intended to testify on his own behalf and that they had advised him against doing so. Defense counsel indicated that the defendant had declined their offer to help him prepare for testifying and expressed concerns about his competency to make this choice. The court then explained to the defendant that he had a right to choose whether to testify. The defendant responded that he had told his counsel that he wanted to testify, but that they were "trying to legally gag" him. In response to the court's suggestion that his counsel might be able to provide useful advice regarding testifying, the defendant stated: "I'd rather speak on my behalf than talk to these two guys here." The court then ruled that the defendant could not be forced to give up his right to testify.

Defense counsel then requested that the court conduct a competency hearing. Counsel asserted that the defendant's views did not comport with reality, pointing to the defendant's sincere belief that he did not commit the crime because he was in the custody of the Department of Correction at the time of the incident, a fact that clearly could be disproved. The court denied counsel's request.

Defense counsel then contended that the court needed to consider whether the defendant would be a competent witness. After a brief canvass, the court ruled that the defendant was a competent witness, noting that even people with severe disabilities can be competent to testify.

Having failed to persuade the court that competency issues precluded the defendant from taking the stand, defense counsel took a different tact. Lorenzen stated that, based on the defendant's failure to seek their counsel and his belief that counsel was working against him, it was Lorenzen's "assessment of the situation . . . that should [the defendant] take the stand and testify, he will essentially be representing himself." Lorenzen asserted that he could not effectively examine the defendant and meet the defendant's ends, and, therefore, the defendant should be canvassed on representing himself. Lorenzen stated that defense counsel would

file a motion to withdraw if necessary. In response, the trial court addressed the defendant, stating: "[Y]our attorney is indicating that if you testify, you'll be representing yourself. Do you understand that?" After the court restated counsel's position, the court asked the defendant: "Is that what you want to do?" The defendant initially responded that it did not make any difference to him, but when further pressed by the court, he responded, "I'll do so . . . ." Twice thereafter, the court asked the defendant whether he understood that he had the right to be represented by counsel, to which he answered in the affirmative. The court warned the defendant of the disadvantages of self-representation, and then ruled: "I have to let him self-represent . . . . But I'm going to appoint counsel as standby counsel, certainly for periods of—for purposes of objection during the cross-examination. . . . Well, standby counsel for purposes of his testimony only."

Defense counsel examined four defense witnesses, and then the defendant took the stand. Per the court's instruction, Lorenzen asked the defendant some preliminary questions, after which he asked: "Is there anything else you'd like to tell the ladies and gentlemen of the jury about this case?" The defendant responded with a largely incoherent statement.[1] The state then conducted its cross-examination, without any objections being interposed. The defendant declined the court's invitation to present additional testimony on redirect examination. Thereafter, defense counsel examined another witness and presented closing argument.

During the presentation of the defense, another issue arose when a juror submitted a note to the court relating to the testimony of a defense witness. After the court questioned the juror, it excused him and substituted an alternate juror. The jury thus constituted returned a verdict of guilty on the charge of murder. The trial court rendered judgment in accordance with the verdict and sentenced the defendant to a fifty year term of incarceration.

In the defendant's appeal from the judgment of conviction before the Appellate Court,[2] he claimed, among other things, that the trial court improperly had: (1) forced him to choose between two fundamental constitutional rights—his right to counsel and his right to testify; and (2) dismissed the juror. *State* v. *Francis*, supra, 148 Conn. App. 791. The Appellate Court rejected both claims, as well as others not relevant to this certified appeal, and affirmed the judgment. Id. With respect to the first issue, the Appellate Court concluded that the record was unclear as to whether defense counsel was no longer representing the defendant when he testified. Id., 812. Nonetheless, the court concluded that, even assuming the defendant had been self-represented, the trial court properly had canvassed him to ensure that his choice to proceed pro se had been made in a

knowing and intelligent fashion. Id., 814. With respect to the second issue, the court concluded that, although the juror expressly had stated he had not formed an opinion as to the defendant's guilt or innocence, the record nonetheless indicated there was a legitimate concern that the juror had done so. Id., 818. The Appellate Court further noted that the defendant had not shown that the juror's dismissal was harmful. Id.

This court thereafter granted the defendant's petition for certification to appeal, limited to the following issues: "1. Did the Appellate Court properly conclude that the defendant waived his right to counsel when he elected to testify at trial?"; and "2. Did the Appellate Court properly conclude that the trial court did not abuse its discretion when it dismissed a juror and, if not, did the trial court's improper dismissal of a juror constitute reversible error?" *State* v. *Francis*, 311 Conn. 940, 89 A.3d 349 (2014). We answer the first question in the negative and conclude that the defendant is entitled to a new trial on that basis, and, therefore, we do not reach the second question.[3]

The defendant contends that the record is clear that he was self-represented during his testimony, but it does not clearly demonstrate that he understood and voluntarily waived his right to counsel for that period. In the trial court, the defendant did not challenge the propriety of that court's decision to canvass him or the substance of that canvass. He seeks review, therefore, under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). See id., 239–40 (permitting defendant to prevail on unpreserved claim only if: "[1] the record is adequate to review the alleged claim of error; [2] the claim is of constitutional magnitude alleging the violation of a fundamental right; [3] the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and [4] if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt" [footnote omitted]). We conclude that the defendant has met the requirements for relief under *Golding*.

The sixth amendment to the United States constitution guarantees a criminal defendant the right to the assistance of counsel at trial. *Gideon* v. *Wainwright*, 372 U.S. 335, 339, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). "This is not to say that a criminal defendant is barred from waiving his right to counsel. Just as an accused is entitled to the assistance of counsel, so also is a criminal defendant guaranteed the right to self-representation. *Faretta* v. *California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)." *United States* v. *Scott*, 909 F.2d 488, 489 (11th Cir. 1990). The assistance of counsel and the right to defend as a self-represented party "form a single, inseparable bundle of rights, two faces of the same coin." *United States* v. *Plattner*, 330 F.2d 271, 276 (2d Cir. 1964). Thus, "[t]he right to counsel

and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them." (Internal quotation marks omitted.) *State* v. *Henderson*, 307 Conn. 533, 546, 55 A.3d 291 (2012). "The right to defend is personal. The defendant, and not his lawyer or the [s]tate, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage." *Faretta* v. *California*, supra, 834.

"Before allowing pro se representation . . . a trial judge must make sure that certain prerequisites have been satisfied because an individual who undertakes self-representation is at a significant disadvantage compared to someone defended by counsel. First, a defendant's invocation of the right to self-representation must be contained in unequivocal language." (Internal quotation marks omitted.) *United States* v. *Robinson*, 753 F.3d 31, 42 (1st Cir.), cert. denied, U.S. , 135 S. Ct. 313, 190 L. Ed. 2d 227 (2014); accord *State* v. *Jones*, 281 Conn. 613, 648, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007). "The threshold requirement that the defendant clearly and unequivocally invoke his right to proceed pro se is one of many safeguards of the fundamental right to counsel. See *United States* v. *Frazier-El*, 204 F.3d 553, 558 (4th Cir.) ([t]he particular requirement that a request for self-representation be clear and unequivocal is necessary to protect against an inadvertent waiver of the right to counsel by a defendant's occasional musings on the benefits of self-representation . . .), cert. denied, 531 U.S. 994, 121 S. Ct. 487, 148 L. Ed. 2d 459 (2000). . . . To invoke his [s]ixth [a]mendment right [to self-representation] under *Faretta* [v. *California*, supra, 422 U.S. 806] a defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to his request. Insofar as the desire to proceed pro se is concerned, [a defendant] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made. . . . [I]t is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry." (Citations omitted; internal quotation marks omitted.) *State* v. *Flanagan*, 293 Conn. 406, 423–24, 978 A.2d 64 (2009).

"Second . . . a waiver of counsel must be knowing, intelligent and voluntary." (Internal quotation marks omitted.) *United States* v. *Robinson*, supra, 753 F.3d 42. Before deeming such a waiver to have been made, the trial judge is required to "indulge in every reasonable presumption against waiver of the right to counsel" and "investigate as long and as thoroughly as the circumstances of the case before him [or her] demand." (Internal quotation marks omitted.) *United States* v. *Proctor*,

166 F.3d 396, 401–402 (1st Cir. 1999); accord *Brewer* v. *Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977). "[I]t is important that the court consider whether the defendant affirmatively made a choice or whether he proceeded alone only because he felt he had no choice and thus did not effectively waive his right." (Internal quotation marks omitted.) *United States* v. *Calabro*, 467 F.2d 973, 985 (2d Cir. 1972), cert. denied sub nom. *Tortorello* v. *United States*, 410 U.S. 926, 93 S. Ct. 1357, 35 L. Ed. 2d 587 (1973). Violation of the right to counsel at a critical stage of the criminal proceedings is structural error, requiring a new trial without proof of actual prejudice. See, e.g., *State* v. *Mebane*, 204 Conn. 585, 588, 595, 529 A.2d 680 (1987) (reversal required when defendant was prevented from speaking with counsel during recess in midst of state's cross-examination), cert. denied, 484 U.S. 1046, 108 S. Ct. 784, 98 L. Ed. 2d 870 (1988); see also *State* v. *Brown*, 279 Conn. 493, 507 n.5, 903 A.2d 169 (2006); *State* v. *Peeler*, 265 Conn. 460, 475, 828 A.2d 1216 (2003), cert. denied, 541 U.S. 1029, 124 S. Ct. 2094, 158 L. Ed. 2d 710 (2004).

A criminal defendant also has a right to testify on his own behalf, secured by the fifth, sixth, and fourteenth amendments to the federal constitution. See *Rock* v. *Arkansas*, 483 U.S. 44, 51–52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). "The right to testify includes the right to testify fully, without perjury, to matters not precluded by a rule of evidence." *Wilson* v. *State*, 12 So. 3d 292, 297 (Fla. App. 2009), citing *Nix* v. *Whiteside*, 475 U.S. 157, 173, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986); *United States* v. *Scott*, supra, 909 F.2d 491.

It is not uncommon for trial counsel and a defendant to disagree as to whether the defendant should testify. The defendant's right to testify, however, cannot be waived by counsel. See *State* v. *Davis*, 199 Conn. 88, 95, 506 A.2d 86 (1986). Indeed, in the absence of an intention to offer perjurious testimony, "[i]f a defendant insists on testifying, no matter how unwise such a decision, the attorney must comply with the request." *Ortega* v. *O'Leary*, 843 F.2d 258, 261 (7th Cir.), cert. denied, 488 U.S. 841, 109 S. Ct. 110, 102 L. Ed. 2d 85 (1988); accord *United States* v. *Curtis*, 742 F.2d 1070, 1076 (7th Cir. 1984), cert. denied, 475 U.S. 1064, 106 S. Ct. 1374, 89 L. Ed. 2d 600 (1986). "[I]f counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify. The defendant can then make the choice of whether to take the stand with the advice of competent counsel. It is important to remember that while defense counsel serves as an advocate for the client, it is the client who is the master of his or her own defense. . . . The wisdom or unwisdom of the defendant's choice does not diminish his right to make it. . . . By exercising his constitutional right to the assistance of counsel, a defen-

dant does not relinquish his right to set the parameters of that representation." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *United States* v. *Teague*, 953 F.2d 1525, 1533 (11th Cir.), cert. denied, 506 U.S. 842, 113 S. Ct. 127, 121 L. Ed. 2d 82 (1992).

With these foundational principles in mind, we turn to the facts in the present case to ascertain whether, as the defendant contends, he was forced to represent himself in order to vindicate his right to testify on his own behalf. We begin with the threshold question of whether the defendant was represented by counsel during his testimony. We conclude that the record reflects that he was not.

The record reflects that the court and defense counsel understood the defendant to be self-represented during his testimony. Defense counsel made it abundantly clear that they had no intention of representing the defendant should he testify and would file a motion to withdraw if necessary to avoid doing so. After canvassing the defendant regarding the pitfalls of proceeding pro se, the trial court ruled that it would have to let the defendant "self-represent . . . during this point . . . ." Consistent with this ruling, the court's docket sheet reflects the court clerk's notations indicating that, for purposes of the defendant's testimony only, the defendant was allowed to represent himself and standby counsel was appointed. It further indicated that, for the remainder of the trial, counsel was retained to represent the defendant. Because of this ruling, defense counsel did not need to file a motion to withdraw, as their temporary status as standby counsel remedied the representation problem that they had sought to avoid.

The presentation of the defendant's testimony was consistent with self-representation. The essential feature of self-representation is the defendant's actual control of the presentation of his case. See *McKaskle* v. *Wiggins*, 465 U.S. 168, 177, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) ("[i]n determining whether a defendant's *Faretta* rights [to self-representation] have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way"); *State* v. *Shashaty*, 251 Conn. 768, 778, 742 A.2d 786 (1999) ("defendant's constitutional right to self-representation requires that he have actual control over the case he chooses to present to the jury" [internal quotation marks omitted]), cert. denied, 529 U.S. 1094, 120 S. Ct. 1734, 146 L. Ed. 2d 653 (2000). Here, the defendant was permitted to set forth an unguided, uninterrupted narrative to the jury of the facts he deemed relevant to his case. He also was permitted to amplify those remarks on redirect examination, but he declined to do so.

The trial court's appointment of defense counsel as

standby counsel for the duration of the defendant's testimony was consistent with the defendant's self-representation. See *State* v. *Wang*, 312 Conn. 222, 263 n.37, 92 A.3d 220 (2014) ("standby counsel's advisory role . . . does not supplant the defendant's fundamental right to represent himself, and, therefore, does not amount to legal representation"); see also Practice Book § 44-4 ("[w]hen a defendant has been permitted to proceed without the assistance of counsel, the judicial authority may appoint standby counsel"). As the United States Supreme Court has explained, "*Faretta* rights are . . . not infringed when standby counsel assists the pro se defendant in overcoming routine procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete. Nor are they infringed when counsel merely helps to ensure the defendant's compliance with basic rules of courtroom protocol and procedure. In neither case is there any significant interference with the defendant's actual control over the presentation of his defense." *McKaskle* v. *Wiggins*, supra, 465 U.S. 183. Indeed, in the present case, the trial court assigned standby counsel the limited role of asking the defendant introductory questions and asserting objections during cross-examination, specifically to questions that went beyond the scope of direct examination, although standby counsel in fact asserted no objections. The defendant agreed to standby counsel's role. Accordingly, we conclude that the defendant was self-represented during his testimony.

Having resolved this threshold question, we turn to the matter of whether the requirements for self-representation were met. We note at the outset that the defendant's appellate counsel represented at oral argument before this court, without contradiction by the state, that trial counsel's reason for seeking to disassociate themselves from the defendant's testimony was not predicated on information or belief that the defendant intended to commit perjury. Therefore, the defendant would be entitled to choose whether to be represented by counsel or to represent himself.

We first observe the absence of a clear, unequivocal statement by the defendant that he wanted to represent himself. See *United States* v. *Robinson*, supra, 753 F.3d 42; *State* v. *Jones*, supra, 281 Conn. 648. Prior to the court's canvass on that issue, the defendant never asked to proceed pro se. Indeed, defense counsel never even represented that the defendant had expressed a desire to do so and acknowledged that he had not asked them to withdraw. Although the defendant made two remarks indicating that he would rather speak for himself than talk to counsel, those remarks were made in connection with the discussion of whether the defendant was competent to decide whether to testify. Thus, the context surrounding those two remarks made clear that the

defendant was not expressing a desire to represent himself but rather a desire to testify and his choice not to discuss that decision further with counsel because they were trying to thwart his intentions. Indeed, the court undertook no inquiry regarding representation in response to those remarks.

The court's subsequent decision to canvass the defendant regarding waiver of counsel was prompted by defense counsel's statement of their position. The canvass, therefore, was not in response to any desire that the defendant had expressed, but, rather, those of defense counsel. The defendant's responses to the court's questions of whether he wanted to represent himself reflect first, indifference—"It doesn't make a difference, ma'am"—and then, acquiescence—"I'll do so, ma'am." Neither statement reflects a clear desire to proceed without the aid of counsel. Cf. *People* v. *Shelley*, 156 Cal. App. 3d 521, 533, 202 Cal. Rptr. 874 (1984) (defendant's "mere acquiescence in his trial counsel's handling of the case does not constitute an intentional relinquishment or abandonment of a known right or privilege" [internal quotation marks omitted]), quoting *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

Even more problematic, the trial court's statements to the defendant in that canvass reasonably would have been understood by him to mean that, if he elected to testify, he could do so only if he represented himself. Although this was defense counsel's position, the court *twice* relayed that position to the defendant without clearly explaining that he was constitutionally entitled to the assistance of counsel even if he elected to testify.[4] The court's subsequent statements reminding the defendant that he had the right to counsel, untethered to his choice of testifying, did not sufficiently clarify this matter. The court never explained that, despite counsel's position, the court could compel his counsel to remain in the case in the absence of a showing of good cause to withdraw; see Practice Book § 3-10; or it could appoint substitute counsel. See *State* v. *Harman*, 198 Conn. 124, 130, 502 A.2d 381 (1985) ("Trial courts have an unquestioned obligation, under both the state and the federal constitutions, to provide indigent defendants with legal representation. . . . If appointed counsel withdraws from the case for good cause, the trial court must furnish a new attorney for the defendant." [Citations omitted.]); see also Practice Book § 3-10 (c) (if counsel seeks to withdraw, the defendant must be informed by counsel "that if the motion to withdraw is granted the [defendant] should request court appointed counsel, obtain another attorney or file an appearance on his or her own behalf with the court"). Thus, the court effectively conveyed to the defendant that he had two, and only two, choices: (1) testify and self-represent; or (2) relinquish the right to testify and maintain the assistance of counsel.

"[A] defendant will not normally be deemed to have waived the right to counsel by reluctantly agreeing to proceed pro se under circumstances where it may appear that there is no choice." (Internal quotation marks omitted.) *Pazden* v. *Maurer*, 424 F.3d 303, 318 (3d Cir. 2005); see also *United States* v. *Calabro*, supra, 467 F.2d 985 (court should consider whether defendant "proceeded alone only because he felt he had no choice and thus did not effectively waive his right" [internal quotation marks omitted]). In this case, the defendant "was put to a Hobson's choice: decline to testify and lose the opportunity of conveying his version of the facts to the jury, or take the stand and [forgo] his fundamental right to be assisted by counsel. . . . A defendant in a criminal proceeding is entitled to certain rights and protections which derive from a variety of sources. He is entitled to all of them; he cannot be forced to barter one for another. When the exercise of one right is made contingent upon the forbearance of another, both rights are corrupted." (Internal quotation marks omitted.) *United States ex rel. Wilcox* v. *Johnson*, 555 F.2d 115, 120 (3d Cir. 1977); accord *United States* v. *Midgett*, 342 F.3d 321, 327 (4th Cir. 2003) ("in the circumstances of this case, the court impermissibly forced the defendant to choose between two constitutionally protected rights: the right to testify on his own behalf and the right to counsel"); *United States* v. *Scott*, supra, 909 F.2d 493 ("[t]o advise [the defendant] that he could be precluded from testifying, without confirmation that [he] intended to commit perjury, or could proceed pro se impermissibly forced [the defendant] to choose between two constitutionally protected rights"); *Wilson* v. *State*, supra, 12 So. 3d 293 ("This case concerns a defendant's desire to testify in greater detail about the incidents giving rise to the criminal charges, confronted by his attorney's belief that more testimony was not a good idea. The judge offered the defendant the choice of testifying further by giving up his attorney, and representing himself. . . . We hold that the trial court improperly forced a choice between two constitutional rights . . . ."); see also *Nichols* v. *Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992) (counsel failed to function as counsel guaranteed by sixth amendment by threatening to withdraw during trial in order to coerce defendant to relinquish his fundamental right to testify).

In the present case, it is clear that the defendant cannot be deemed to have voluntarily waived his right to counsel. "[T]he very essence of a voluntary waiver is that it be the product of a free and meaningful choice. *Moore* v. *Michigan*, 355 U.S. 155, 164, [78 S. Ct. 191], 2 L. Ed. 2d 167 (1957); *Wilks* v. *Israel*, 627 F.2d 32, 35 (7th Cir. 1980); *Maynard* v. *Meachum*, 545 F.2d 273, 278 (1st Cir. 1976)." *McKee* v. *Harris*, 649 F.2d 927, 931 (2d Cir. 1981), cert. denied, 456 U.S. 917, 102 S. Ct. 773, 72 L. Ed. 2d 177 (1982). Because the defendant was improperly deprived of counsel, he need not prove prej-

udice and is entitled to a new trial.[5]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for a new trial.

In this opinion ROGERS, C. J., and PALMER and EVELEIGH, Js., concurred.

[1] The defendant stated: "Due to today's session, I have acknowledged that my whereabouts would contradict any charges that would be brought against me, and I acknowledge today also that the state of Connecticut and Bruce Lorenzen and William O'Connor is attempting to slave, gamble, and incompetent to commit by probate without a cause to embezzle due to the fact that this matter does not have a cause of death.

"And I also have some other notes, that I'm not booked or arraigned and my identity has been gambled by Major Crimes Division also at the same time—and also by an attorney by the name of Cynthia I. Crockett gambled my name by settling a claim in my little brother's name, Maurice Francis, and that's fiber optic. On November 16, 80 Washington Street, which can also be subpoenaed too and sent in for permanencies. I am legally disabled."

[2] The defendant directly appealed from the judgment of conviction to this court pursuant to General Statutes § 51-199 (b) (3), raising five claims. We transferred the appeal to the Appellate Court pursuant to § 51-199 (c) and Practice Book § 65-1.

[3] We make the following observation, however, as to the second certified question. The defendant contends that the Appellate Court improperly concluded that the trial court did not abuse its discretion in dismissing the juror for beginning to form an opinion about the verdict because: (1) the trial court misconstrued the meaning of deliberation as extending to a juror's internal thought process during trial about how evidence relates to other evidence in the case; and (2) there was nothing in the record to contradict or call into question the juror's express representations to the trial court that he had not begun to form an opinion about the verdict, and the prosecutor's speculation that the juror's *manner* evidenced that he nonetheless had contravened the court's instructions was not a proper basis to conclude otherwise. Our failure to reach these issues in light of our dispositive conclusion as to the first certified question should not be construed as sanctioning the Appellate Court's view of the law or the record.

[4] The state contends that the defendant is not entitled to review of this claim because his counsel induced the error. We disagree. We note that the state never asserted induced error in the Appellate Court, although that court did, in a footnote, characterize the defendant's claim as having attributes similar to claims rejected under the doctrine of induced error. See *State* v. *Francis*, supra, 148 Conn. App. 813 n.14. "We ordinarily decline to consider claims that [were] not raise[d] properly before the Appellate Court . . . ." *State* v. *Fauci*, 282 Conn. 23, 26 n.1, 917 A.2d 978 (2007). We also observe that the right to counsel could not be waived by counsel and that the court had an independent obligation to canvass the defendant to ensure that his waiver was voluntary. See *United States* v. *Midgett*, 342 F.3d 321, 326–27 (4th Cir. 2003) ("The issue on appeal . . . is not whether counsel was ineffective so as to warrant a new trial, but whether the district court erred by forcing [the defendant] to choose between testifying or retaining counsel. We believe that, in the circumstances of this case, the court did err in this regard, given that the court effectively mirrored defense counsel's error by deciding that [the defendant's] testimony would be perjurious.").

[5] In support of its contrary conclusion, the dissent takes a view of the record that differs from that of the trial court itself, disagrees with the state's own characterization of the questioning that preceded the defendant's self-guided narrative, and relies on case law addressing matters inapplicable to the actual facts and issues in the present case (for example, whether a less comprehensive warning about the dangers of self-representation can be given when a defendant elects to testify in the narrative when seeking to conduct his entire defense, whether a trial court can require a defendant to testify in narrative form when the court is informed that the defendant intends to present perjurious testimony, and whether a defendant who refuses the assistance of counsel may be forced to choose between unwanted counsel and self-representation). Notably, the state does not rely on any of them.